SPECTOR, Judge.
Appellant seeks reversal of a final summary judgment holding that appellee, a former employee, is entitled to specific performance for the issuance of 1,500 shares of common stock under an employee stock option agreement.
Amrep Corporation, formerly American Realty and Petroleum Corporation, is primarily in the real estate development business. Its stock is traded on the American Stock Exchange. An office is maintained by it in Ocala, Marion County, Florida, near one of its real estate developments, Rainbow Lakes Estate. Appellee Nicholson was employed by appellant in 1960 in the capacity of head bookkeeper and chief accountant. Shortly thereafter, he became comptroller of the company’s Rainbow Lakes operation. In 1964, he was elected a vice president of the corporation, and his duties were expanded to comptroller of the financial records of the company’s other real estate development, Rio Rancho Estates *85 in Albuquerque, New Mexico, as well as the Florida operation.
On October 3, 1966, appellant granted Mr. Nicholson a stock option agreement entitling him to purchase 2,000 shares of the company’s common stock at a price of $3.50 per share which represented the market value of the shares at the time of the option. Similar options were granted to seven other corporate employees in varying amounts of optioned shares. On its face, the agreement described the option as being granted for the purpose of inducing the optionees to acquire a proprietary interest in the company as an added incentive to advance the interests of the company. Paragraph 2 of the agreement grants the option to purchase 2,000 shares at $3.50 each “in the manner and subject to the provisions hereinafter provided”. Paragraph 3 states: “Subject to the provisions of Paragraph 5 hereof, the option shall terminate in all respects on, and no exercise as to any shares covered by the option shall be honored after October 2, 1971.”
Paragraph 4 of the option agreement provides that it is exercisable during the lifetime of and only by the optionee; the option may be exercised in whole or in part at any time or times during the remaining term thereof provided that, subject to the provisions of paragraph 5, the optionee is an employee of the corporation or a subsidiary thereof at the time of any and every exercise of the option. Paragraph 5 provides as follows:
“Notwithstanding anything to the contrary herein contained, if on or before the expiration date of the option Op-tionee dies or ceases to be employed by an Employer Corporation, the option shall expire and become null and void three months after the date of death or the date such employment ceases; and within such 3-month period the Optionee or his personal representatives may exercise the option at any time or times with respect to any and all shares covered by the option and as to which no exercise had been made as of the date of death or termination of employment, provided, however, that in no event shall the option be exercisable after the expiration date specified in Paragraph 3 hereof.”
Paragraph 11 of the agreement provides that the granting of the option imposes no obligation on the employer corporation to continue the employment of the optionee. Lastly, the agreement provides in paragraph 12 that the option shall be construed and shall take effect in accordance with the laws of the State of New York.
Although the basic option agreement itself does not contain any limitation as to the number of shares which may be purchased thereunder at any one time, appellee Nicholson did sign a letter agreeing not to exercise the option as to more than twenty-five percent of the shares per year.
The text of the letter follows:
“October 4, 1966
“American Realty and Petroleum Corp. 16 West 61st Street New York, N. Y. 10023 “Dear Sirs :
On October 3, 1966, you granted me an option to purchase 2,000 shares of your common stock, which option is exercisable at any time for five years at a price equal to the market price on the date of the grant. I hereby confirm that I will not exercise the option as to any of the shares during the first year after the date of grant, nor as to more than 25% of the total number of shares in any year thereafter.
Very truly yours, Howard T. Nicholson”
Both the option agreement and the October 4 letter quoted above were drafted by appellant’s New York counsel and forwarded to appellee in Ocala where the latter signed the letter of limitation dated October 4, 1966, and mailed same to his employer in New York.
*86 From all that appears in the record, the relationship between the appellant and ap-pellee remained favorable until 1968. In January of 1968, appellee exercised his rights under the option agreement by purchasing 500 shares of stock. This number constituted twenty-five percent of the total number of shares optioned under the agreement. Thereafter, the relationship between appellant and appellee deteriorated for reasons undisclosed by the record. In any event, there is evidence that during the month of June, 1968, conversations occurred between a Mr. Oberman, an agent of appellant, and appellee in which the latter was informed that his employment with the company was being terminated and that he would be given severance pay of one thousand dollars per month for August through October of 1968. Appellee was permitted to maintain an office in appellant’s premises in Ocala during July and, in fact, drew checks on the company’s account at the local bank and executed a deed to some property in the development as company vice president during that month.
Appellee obviously sensed that the relationship between him and the company was not the same. Oberman had told him that he was being terminated. A company officer in New York had told him that it was unnecessary for him to be physically present at the Ocala office as in the past. Sensing that his services were no longer welcome by Amrep, appellee wrote a letter dated September 23, 1968, notifying the company that he was exercising the option to purchase the remaining 1,500 shares of stock under the option agreement. On September 26, 1968, appellee received a telephone call from Howard Friedman, President of appellant corporation, during which Mr. Friedman stated that appellee had no right to purchase 1,500 shares under the option agreement and that if appel-lee insisted on the purchase, his employment would be discontinued prior to October 3, 1968, and that he would have no further rights whatever under the option agreement. The next day, September 27, appellee’s attorney wrote appellant’s president challenging the company’s conclusion that appellee’s rights under the agreement did not exist or that such rights could be extinguished by the discontinuance of his employment; and, further, inquiring as to the legal basis for such conclusion. Appel-lee’s attorney reasserted the election to exercise the option on the remaining 1,500 shares by appellee.
This action was commenced on November 8, 1968, and in due course the pleadings were closed and both parties made motions for summary judgment supported by their respective pleadings, affidavits, admissions, answers to interrogatories, exhibits attached to the foregoing and the deposition of appellee. At the hearing on said motions, both parties took the position that there are no genuine issues as to material facts and that the matter could be decided on summary proceedings. Appellant argued that the letter dated October 4, 1966, addressed to the company and signed by appellee had the effect of modifying the original agreement by limiting the number of shares which appellee could acquire in any one year to 500 shares, and inasmuch as appellee had acquired 500 shares under the agreement in January of 1968, no further shares could be acquired by appellee during that year by reason of the effect of the October 4, 1966, letter. Appellant further contends that since appellee’s employment was terminated before a new option year commenced, appellee’s further rights to acquire additional shares were extinguished. In opposition, appellee contended that he was not bound by the October 4 letter purporting to modify the original agreement because there was no consideration given him for the agreement embodied therein. Appellant, relying on paragraph 12 of the original agreement, contends that the laws of the State of New York are controlling in the premises and that under the provisions of Section 5-1103 of the New York General Obligations Law, McKinney’s Consol.Laws, c. 24-A, a written agreement for modification of a contract signed by the person sought to be bound *87 thereby need not be supported by consideration.
The trial court rejected this argument, holding that since the letter of October 4, 1966, purporting to modify the basic option agreement was signed by appellee in Florida, the laws of this state requiring consideration for such an agreement are applicable. So holding, the trial court concluded that there was no restriction whatever as to the number of shares that appellee could purchase nor as to the time period for such purchase. Accordingly, summary judgment was entered for appellee by requiring appellant to issue 1,500 shares to appellee upon payment by the latter of the option amount, $5,250.00.
The rule is well settled in this jurisdiction that where a judgment rests upon a valid basis, an appellate court will not disturb that judgment merely because it is founded upon erroneous grounds. Escarra v. Winn-Dixie Stores, Inc., 131 So.2d 483 (Fla.1961); Savage v. State, 156 So.2d 566 (Fla.App.1963), cert. den. 158 So.2d 518. In the case at bar, there is a valid reason that supports the judgment being reviewed so as to make it unnecessary to decide the questions posed by appellant. That reason is not dependent upon any facts which may be in controversy. It will be recalled that paragraph 5 of the basic stock option granted appellee the right to exercise his rights to purchase any shares remaining under the agreement as to which no exercise had been made at the time of his termination of employment. Pursuant to stipulation of the parties, there was introduced in evidence for the trial court’s consideration minutes of various meetings of appellant’s board of directors, stockholders and executive committees. Among these there is the minutes of a special meeting of the executive committee of the board of directors of appellant corporation held on July 10, 1968. The said minutes reflect that Mr. Nicholson had resigned as vice president of the corporation effective July 31, 1968. This is corroborated by appellant’s answer to an interrogatory stating that appellant’s agent notified appellee orally in June, 1968, that his employment was being terminated. A further answer stated that appellee ceased to function as an employee on July 25, 1968. Taking any of these dates as being true, and appellant cannot deny them since appellant submitted the dates to the court under oath, it is clear that appellee exercised his right to the remaining shares on September 23, 1968, which was within three months of his termination of employment with appellant according to the latter’s own records and evidence.
Even if appellant’s contention be correct that appellee’s letter of October 4, 1966, did modify the basic option agreement, an examination of the said letter of modification fails to reflect any intention at all to modify paragraph 5. All of the language of the letter goes to the content of paragraph 4 of the option agreement which relates to the number of shares which can be exercised at any one time just as the letter did. Moreover, paragraph 4 itself states that its provisions are subject to the provisions of paragraph 5 which sets out the post-employment rights of the appellee. Viewing the correctness of the summary judgment entered below in light of appellee’s post-employment rights and taking as true appellant’s own evidence as to when such employment terminated, it is clear that appellee was entitled to the judgment entered.
We have considered the remaining contentions of appellant and find them to be without merit. Accordingly, the judgment reviewed herein is
Affirmed.
JOHNSON, C. J., and WIGGINTON, J., concur.